## GRAND LODGE OF ALABAMA vs. WADDILL.

1. *Authority of corporation to lend money.*—The charter of the grand lodge of free-masons of Alabama (Toulmin's Digest, 582–3) confers on said corporation no power to lend money.

2. *When action lies for money had and received.*—If a corporation lends money, without authority under its charter, and takes a promissory note to secure the repayment, it cannot recover under the common money counts.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. NAT. COOK.

THIS action was brought by the "Most Worshipful Grand Lodge of Ancient Free-masons of Alabama, and

its Masonic Jurisdiction," against William Waddill, Jr., Abner Jones, George P. Blevins, John M. Strong, and Wesley Plattenburg; and was founded on the defendants' promissory note, of which the following is a copy:

"Selma, March 8th, 1851.

"$2,753 75. Twelve months after date, we promise to pay to the Most Worshipful Grand Lodge of Ancient Free-masons of Alabama and its Masonic Jurisdiction the sum of two thousand seven hundred and fifty-three 75-100 dollars, for money loaned to us by the trustees of said grand lodge, in that behalf duly appointed; and upon which we bind ourselves to pay interest, at the rate of seven per cent. *per annum* from date."

(Signed by each of the defendants.)

The action was commenced on the 10th September, 1856. The complaint contained a count on the note, and the common count for money loaned. The defendants pleaded the general issue, "in short by consent, with leave to give in evidence any special matter of defense." On the trial, as the bill of exceptions shows, the plaintiff read in evidence the note on which the suit was founded, and its own act of incorporation, as found in Toulmin's Digest, (pages 582–3,) which is in the following words:

"*An Act to incorporate the Most Worshipful Grand Lodge of Ancient Free-masons of Alabama, and its Masonic Jurisdiction.* Passed, June 16, 1821.

"SECTION 1. *Be it enacted by the senate and house of representatives of the State of Alabama, in general assembly convened,* That Major-General Thomas W. Farrar, grand master, and others, the officers and members of the most worshipful grand lodge of ancient free-masons of Alabama and the subordinate lodges under its jurisdiction, and the several persons who now are, or shall hereafter be, members respectively of said grand lodge or the subordinate lodges under its jurisdiction, shall be, and they are hereby declared to be, a body politic and corporate, in name and in deed, by the name and style of the *Most Worshipful Grand Lodge of Ancient Free-masons of Alabama,*

*and its Masonic Jurisdiction;* and, by the same name, shall have succession perpetual of officers and members, and a common seal, with power to change, alter, and make new the same, as often as the said corporation shall judge expedient.

"SECTION 2. *And be it further enacted,* That the said society, and the lodges under its jurisdiction, shall be able and capable in law to purchase, have, hold, receive, enjoy, possess, and retain, to itself or any lodge under its jurisdiction, or any of them, in perpetuity, or for any term of years, any lands, tenements, or hereditaments, of what kind or nature soever, not exceeding the value of twenty thousand dollars; and to sell, alien, exchange, or demise or lease the same, or any part thereof, as the said corporation shall think proper; and by the same name to sue and be sued, to plead and be impleaded, answer and be answered unto, in any court of law or equity in this State; and to make such rules, orders and by-laws, not repugnant to the laws of this State, as may be necessary for the order, rule, good government, and management thereof; and it shall and may be lawful for the said society to constitute subordinate lodges, and to do all other things concerning the government, the estates, moneys and revenues of said grand lodge and subordinate lodges.

"SECTION 3. *And be it further enacted,* That it shall and may be lawful for the said corporation to take and hold forever any charitable donation, *on* (?) devises and bequests of lands, not exceeding ten thousand dollars; and to appropriate the same for the benefit of said corporation, in such manner as may be determined by the same.

"SECTION 4. *And be it further enacted,* That the said corporation shall be capable in law to have, hold and receive, possess and enjoy, all such estates, real and personal, moneys, goods, chattels and effects, which may be devised or bequeathed thereto, by whatever name such gift, devise or bequest may be made, and to receive subscriptions and other contributions.

"SECTION 5. *And be it further enacted,* That this act shall be deemed and taken as a public act, and notice thereof shall be taken in all the courts of justice and elsewhere

in this State, and shall be given in evidence, on any trial of any issue or cause, without special pleading.

"SECTION 6. *And be it further enacted*, That this act shall take effect from and after the passage thereof."

The defendants then read in evidence certain extracts from the published proceedings of the plaintiff at its annual communications, showing its action with regard to the loan of its funds, the preference to be given to institutions of learning under masonic influence, the form of security to be taken from borrowers, &c.; and tending to show that the money, for which the note here in suit was given, was loaned by the plaintiff to the *Central Masonic Institute* at Selma. "This being all the evidence, the court charged the jury, at the request of the defendants, that if they believed the evidence, they must find for the defendants; to which charge the plaintiff excepted, and was thereby compelled to take a nonsuit."

The charge of the court is here assigned as error.

Wm. M. BYRD, for appellant. — 1. The appellant's charter shows on its face that it was incorporated for charitable purposes; and the evidence introduced by the defendants in the court below tends to establish the same thing.—18 B. Monroe, 41; 5 Ohio, 59; 3 Zabr. 510; 3 Duer, (N. Y.) 648; 17 Geo. (Miss.) 574; 5 Wis. 173. The express grant of power to dispose of its moneys, contained in the 2d section of the appellant's charter, implies a grant of the right to loan money for the purposes contemplated by its charter, and the incidental power to take the customary securities for its repayment. None of the cases cited for the appellees is inconsistent with this proposition.

2. If the note was void, the plaintiff was nevertheless entitled to recover under the common count.—Waddill v. Ala. & Tenn. Rivers Railroad Co., 35 Ala. 323; Hitchcock v. Lukens, 8 Porter, 333: Upchurch v. Norsworthy, 15 Ala. 705.

GEO. W. GAYLE, with ALEX. WHITE, *contra.*—1. The

power to lend money is a banking privilege, which cannot be exercised by a corporation without an express grant in its charter.—N. Y. Fire Ins. Co. v. Ely, 5 Conn. 560; People v. Utica Ins. Co., 15 Johns. 390. Loaning money was not one of the objects for which the plaintiff was incorporated.—2 Cranch, 127; 4 En. Law & Eq. 426; 31 Ala. 82; 19 Johns. 6; Beatty v. Knowles, 4 Peters, 171.

2. The contract for the loan of the money being void, no recovery could be had under the common counts. 3 Wendell, 573; 5 Porter, 279; 4 Ala. 561; 1 Term, 299.

A. J. WALKER, C. J.—The defendants and George P. Blevins, as to whom the suit abated in consequence of his death, executed their promissory note for the consideration of money loaned by the plaintiff. The recovery of the money was resisted, upon the ground that the plaintiff had no authority to make a loan of money; and the court below, by its charge, sustained the defense. We are constrained by our convictions of the law to approve the charge.

The authority of corporations is limited by their chartered powers, and the necessary and proper means of executing those powers.—City Council of Montgomery v. M. & W. P. R. Co., 31 Ala. 76; Ex parte Burnett, 30 Ala. 461; M. & A. v. Allaire, 14 Ala. 400; Smith v. Ala. L. I. & T. Co., 4 Ala. 558; State v. M. & A. of Mobile, 5 P. 279, 309; State v. Stebbins, 1 St. 299; Straus v. E. Ins. Co., 5 Ohio, 59; A. & A. on Cor. 270, § 256. The second section of the plaintiff's charter confers authority to take and hold real estate, of value not exceeding twenty thousand dollars, and to sell, lease or exchange the same, to sue and be sued in the corporate name, to make rules for the government of the institution, to constitute subordinate lodges, "and to do all other things concerning the government, the estates, moneys and revenues of said grand lodge and subordinate lodges." The third section confers authority to take and hold any charitable donation, or devises and bequests of lands, not exceeding ten thousand dollars, and to appropriate the same for the benefit of the corporation, in such manner as might be determined

by the same.   The fourth section bestows a capacity to
have, hold and receive, possess and enjoy, all such estates,
real and personal, moneys, goods, chattels and effects,
which may be devised or bequeathed thereto, and to re-
ceive subscriptions and contributions.   The foregoing is
an epitome of the grants of power, so far as it is necessary
to consider them in this case.

   Only two of the grants of power have any relation to
money.   One of those grants is made in the second sec-
tion, and confers power "to do all other things concern-
ing" the moneys and revenues of the corporation.   The
other of those grants, found in the fourth section, empow-
ers the corporation to "have, hold and receive, possess
and enjoy" all moneys which may be bequeathed to it.
The former of those grants should not be understood to
authorize the corporation to do anything that it might
will with its funds.   If so understood, a vague generality
would become the warrant of authority to invest in any
business or enterprise known to trade or commerce ; and
a corporation, designed to be one of few and limited
powers, might engage in the most extensive and varied
operations.   Grants of power to corporations, unlike the
grants of individuals, are to be strictly construed, in favor
of the government, and against the grantee.   Corpora-
tions can claim nothing that is not clearly given.   Ambi-
guities operate against them.   "In the construction of
every charter, to be in doubt is to be resolved; and every
resolution which springs from doubt is against the corpo-
ration."—Penn. R. R. Co. v. Canal Comm'rs, 21 Penn. 9;
Richmond R. R. Co. v. Louisa R. R. Co., 18 Howard, 81;
Sedgwick on Stat. & Con. Law, 338–342.

   The clause granting the power to do all other things con-
cerning the money and revenues being vague and ambigu-
ous, we must not strive to give it the largest operation, but
rather to limit it until there shall be no doubt, lest it may
have a larger scope than was intended by the legislature.
It must be restricted by the purposes and other powers of
the corporation.—City Council of Montgomery v. We-
tumpka Plank R. Co., *supra;* Beatty v. Knowles, 4 Pet.
171.   It must be regarded as only conferring an ample

discretion over the revenue of the corporation, in carrying out the specified powers conferred upon it, and in accomplishing the purposes of its creation. We take a like view of the power to possess and enjoy money bequeathed to the corporation. The money must be enjoyed by the employment of it in exercising the specified powers, and in executing the purposes of the corporation.

There is no specified power granted to this corporation, in the exercise of which the loaning of money becomes an appropriate or necessary means. Nor is there any purpose to be accomplished by the corporation, as indicated in the charter, which requires a resort to the loaning of money. There is some evidence afforded by the third section, that the purpose of the society is charity; but the loaning of money is by no means a necessary means of accomplishing charitable purposes.

Contracts of corporations, which they have no power to make, are void, and courts of justice will not enforce them. So, also, promissory notes, and other instruments, given to secure the performance of the contract, are void. No action to enforce the contract, whatever form the pleader's skill may give it, can be maintained.—3 Wend. 582; 7 Wend. 34; 25 Wend. 648; 5 Barb. 20. It is true, that money loaned may be recovered under a common money count. But then a recovery under a common count, in this case, would be an enforcement of a void contract, as effectually as if it had been under a special count, setting forth the contract.

The decision in Waddill v. Ala. & Tenn. Rivers R. R. Co., (35 Ala. 323,) has no pertinency to this case. In that case, the money was loaned without the authority of the corporation. Here, such is not shown to have been the case. The corporation, transcending its powers, made the loan.

Judgment affirmed.