# Wilks *v.* Georgia Pacific Railroad Company.

*Bill in Equity for Specific Performance of Contract.*

1. *Want of mutuality, as defense against specific performance.*—When the owner of lands, through or near which it is proposed to run a railroad, binds himself by writing under seal to convey to the projectors, their associates or successors, all the coal and iron upon and in certain designated lands, and to secure to them the right of way, in consideration that they would construct the road to a named point within a specified time; the road having been completed within the specified time, and a bill filed to compel the specific performance of the contract, the objection that it is wanting in mutuality, because of a stipulation that

[Wilks v. Georgia Pacific Railroad Company.]

the projectors should not be liable in damages if they failed to construct the road, comes too late after the completion of the work.

2.   *Want of incorporation as defense.*—Since railroads may be built by private enterprise, without the aid of corporate powers, it is no objection to a specific performance of such contract that the projectors of the road had not been incorporated when the contract was made.

3.   *Assignment of contract; bill by assignee.*—The bond being made payable to the projectors by name, "their associates and successors," and them duly assigned by them to a corporation, by which the road was built as stipulated, that corporation may maintain a bill for the specific performance of the contract.

4.   *Railroad corporation; power to acquire mineral lands.*—A railroad corporation can not, without an express grant of power, acquire or recover mineral interests in lands, since such property is neither necessary nor proper for carrying out the purposes of the corporation.

5.   *Estoppel by contract with corporation.*—If a party who contracts with a corporation thereby estops himself, when sued on the contract, from denying the power of the corporation to make it, as to which the decided cases are conflicting, the principle does not apply when a corporation seeks to enforce a contract as assignee of one of the original parties.

6.   *Corporation; when can not enforce executory contract.*—A corporation can not, without an express grant of power, sue on an executory contract, and recover an interest in lands, when it does not appear that such land or interest is necessary for carrying into effect some power or purpose for which the corporation was created.

APPEAL from the Chancery Court of Fayette.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 18th day of February, 1884, by the Georgia Pacific Railroad Company, a corporation chartered under the laws of Alabama, against M. D. Wilks and J. C. Wilks, his wife; and sought the specific performance of a contract, which, as reduced to writing, and signed by the defendants, was dated March 12th, 1880, and in these words: "State of Alabama, ⎫ Know all men by these presents, that County of Fayette. ⎰ *whereas* Alfred H. Colquit, of DeKalb county, Georgia, Eugene C. Gordon and Walter S. Gordon, of the county of Jackson, State of Alabama, and their associates, propose to build a railroad from some point on the Tombigbee river, at or near Columbus or Aberdeen, Mississippi, or from some point on the South and North Railroad of Alabama, or from some point on the Alabama Great Southern Railroad, or from some point on the Memphis and Charleston Railroad, and running into or through the county of Fayette, or the county of Walker, State of Alabama, or both; *and whereas* the building of said railroad would, in our opinion, enhance the value of our farming and timbered lands, and of the production thereof; *and whereas* the building of said railroad would become a convenience and advantage in various ways to our property and our labor, in furnishing facilities for transportation and more rapid communication to and with the markets

of the country: Now, for and in consideration of all the benefits and advantages, which, in our opinion, would accrue to us from the building of such railroad, should the said A. H. Colquit, E. C. Gordon and W. S. Gordon, and their associates and successors, within four years from the date of this instrument, begin or cause to be begun the work of surveying and building or grading such railroad, and shall, within three years from this date, extend the said railroad so as to reach the county of Fayette, or the county of Walker, State of Alabama, or both, then, and in that event, and in consideration of all these benefits and advantages likely to accrue to us from the building of such railroad, we, M. D. Wilks and J. C. Wilks, of the county of Fayette, State of Alabama, do hereby agree and bind ourselves, our heirs, administrators and assigns, to make unto the said A. H. Colquit, E. C. Gordon and W. S. Gordon, their associates or successors, good and sufficient titles to all the coal and iron upon and in the following described lands," describing them ; "together with the right to enter upon the said lands, and prospect for coal and iron, and to mine the same, if they should desire ; also, the right of way of roads and railroads across our lands ; this consideration of coal and iron, so to be deeded, being the said advantages and benefits to us from the building of the proposed railroad. It is further especially and expressly understood, that no such deeds to the coal and iron we own shall be made to the parties named in this instrument, unless they shall build the railroad as specified in this instrument ; nor, on the other hand, shall the parties who now propose to build this railroad be liable for any damages, should they fail to build the same. The object of thus deeding, or of thus binding ourselves to deed our coal and iron interests, on certain conditions, to the said A. H. Colquit, E. C. Gordon and W. S. Gordon, their associates and successors, is hereby expressly declared to be, to induce these parties and their associates to build the said railroad in consideration of the coal and iron to be deeded to them free of any charge. In witness whereof," &c.

The bill alleged that, on the 4th May, 1882, this written instrument was transferred and assigned by said Colquit and Gordons, for valuable consideration, to the Richmond and Danville Extension Company, a corporation chartered by New Jersey and Mississippi, and afterwards, on the 20th December, 1883, by said company to the complainant; that the railroad was constructed and completed within the time specified, and that the defendants refused to execute to the complainant, when tendered for execution, a conveyance according to the terms of the obligation.

The defendants demurred to the bill, assigning the following,

[Wilks v. Georgia Pacific Railroad Company.]

with other grounds of demurrer: (4.) The bill shows that said supposed covenants are without any legal consideration whatever. (5.) The bill shows that said supposed covenants or agreements were entered into by said defendants with said Colquit and Gordons as individuals, upon the condition that they and their associates were, within a certain time, to complete and operate a certain railroad from one or another of the points designated, to one or another of the points named ; and it fails to show that they and their associates had any authority from the State of Alabama to commence, build or operate a railroad as therein contemplated and set forth. (6.) It fails to show that said Colquit and Gordons have complied with the stipulations of said instrument, or to show why they have not complied. (7.) It shows that said supposed covenants, as set forth in said instrument, were personal covenants between the parties named, and were mutual and dependent covenants, binding on said defendants only in the event that said Colquit, Gordons and their associates should begin and complete said road within the time therein specified ; and it shows that said Colquit and Gordons did not build or complete said road. (8.) It fails to show that the complainant has complied with the requirements of the law in obtaining its charter; or that it was authorized by its charter to make the contract by which it claims to be the owner of said obligation ; or that it has any authority to purchase real estate, or *choses* in action, or dependent covenants, or to become the successor of any other corporation, or to enter into contracts with another corporation. (9.) It fails to show any valid and legal assignment of said obligation. (10.) It shows no equitable cause of action in favor of complainant. (11.) There is no mutuality in said contract or obligation. (12.) The bill fails to show any transfer of said obligation to the Richmond and Danville Extension Company. (13.) It fails to aver the complainant's corporate existence, or to set out the powers granted by its charter. (14.) It fails to show that the complainant is authorized by its charter to take and hold real estate.

The chancellor overruled the demurrer on each of these grounds as assigned, and his decree is here assigned as error.

E. A. Powell, and NeSmith & Sanford, for appellants, insisted on each specific cause of demurrer as assigned, and cited the following authorities : Frye on Specific Performance, § 286, 666 ; Waterman on Specific Performance, §§ 195, 207, 225 ; Pomeroy on Contracts, § 162 ; *Lawrence v. Butler*, 1 Sch. & Lef. 13 ; *Irwin v. Bailey*, 72 Ala. 472 ; *Moon v. Crowder*, 72 Ala. 89 ; *Derrick v. Monette*, 73 Ala. 78 ; *Buck v. Smith*, 18 Amer. Rep. 84 ; 1 Chitty's Gen. Practice, 825, 831 ; Story's Equity, §§ 741-42.

McGuire & Collier, Appling & McQueen, and Thos. N. McClellan, *contra*, cited the following authorities: (1.) As to the consideration of the contract, 3 Washb. Real Property, 370; 4 Amer. & Eng. Railway Cases, 101; 1 Sugden on Vendors, 319, *note; Goodlett v. Hansell*, 66 Ala. 161; 49 Miss. 639; *Railroad Co. v. Bacon*, 33 Mich. 466; *Bibb v. Freeman*, 59 Ala. 616; *Erwin v. Erwin*, 25 Ala. 241; Waterman on Specific Performance, 249, 252, 301; 12 Pick. 547; 6 Pick. 427; 22 Pick. 91; 16 Wall. 667, 678. (2.) As to the supposed incapacity of Gordon and associates to build the road, 56 Penn. St. 413; 70 Penn. St. 210; 1 Wood's Railway Law, 3; *Bishop v. North*, 11 Wall. 429; *Bank v. Edgerton*, 30 Vt. 182; 1 Redf. Railw. 4; *Rogan v. Aiken*, 9 Amer. & Eng. Railway Cases, 201; *Railway v. Walker*, 2 Gale & D. 340. (3.) That the objection on account of the supposed want of mutuality can not avail, the complainant having performed all stipulations of the contract on its part, Waterman on Specific Performance, 268; *Perkins v. Hadsell*, 50 Ill. 216; 50 Barb. 24; 51 N. Y. 629; Morawetz on Corporations, § 100; 4 Minn. 141; *Irwin v. Bailey*, 72 Ala. 473. (4.) As to the assignment of the contract, and the right of the assignees to enforce it, *Goodlett v. Hansell*, 66 Ala. 151; 12 Amer. & Eng. Railway Cases, 670; 43 Mich. 584; 24 Mich. 389; 33 Mich. 466; Code, § 2099. (5.) That the question of *ultra vires* does not arise in the case, Morawetz on Corporations, § 117; *Matthews v. Murchison*, 9 Amer. & Eng. Railway Cases, 693; 16 *Ib.* 501; *Duke v. Cahaba Nav. Co.*, 16 Ala. 372; 1 Wood's Railway Law, 503, note; 22 N. Y. 494; *Thompson v. Wheeler*, 44 Iowa, 239; Wood on Corporations, § 237; 61 Ala. 464; *Morgan & Raynor v. Donovan*, 58 Ala. 241.

STONE, C. J.—Wilks, in consideration that Colquit and the Gordons, their associates and successors, would, within three years, construct a railroad from one of several named connections, "so as to reach the county of Fayette, or the county of Walker, State of Alabama, or both," bound himself, by bond in writing, to make to said Colquit and Gordons, their associates or successors, good and sufficient titles to all the coal and iron upon and in certain described lands; and also to secure to them right of way, etc. This bond bears date May 12, 1880. On May 4, 1882, Colquit and the Gordons assigned the bond to the "Richmond and Danville Extension Company," a corporation chartered by New Jersey and Mississippi, and having very large powers,—among them, the right to construct railroads, and to own lands. On December 20, 1883, the Richmond and Danville Extension Company assigned and transferred said bond to the Georgia Pacific Railway Company, a

corporation chartered under the laws of Alabama. The bond contains the following clause: "It is further specially and expressly understood, that no such deeds to the coal and iron we own shall be made to the parties named in this instrument, unless they shall build the railroad as specified in this instrument; nor, on the other hand, shall the parties who now propose to build this railroad be liable for any damages, should they fail to build the same."

The present bill was filed by the Georgia Pacific Railway Company, in February, 1884, and prays a specific performance of said contract. It alleges the completion of the railroad within the time stipulated, tender of a deed to be signed by Wilks, in accordance with the terms of the bond, and his refusal to execute the conveyance. There was a demurrer to the bill, assigning many grounds. The chancellor sustained the demurrer, on the first three grounds, and overruled it as to the others. The demurrant appeals, and assigns as error the chancellor's ruling on the several grounds assigned.

1. It is urged, in support of the demurrers, that the contract we are considering was and is wanting in mutuality, a necessary ingredient in every asserted right to specific performance. We need not decide, in this case, that the obligor, at any time before the railroad was constructed, or before material and substantial steps were taken in its construction, could not have withdrawn from the bargain. That is not this case. Here, the condition was complied with, and the railroad completed, before any dissent from, or dissatisfaction with the agreement, was made known. The question is not distinguishable in principle from an offer of sale, coupled with an option reserved to the other party of saying whether or not he will purchase. Until there is acceptance, there is no sale; and until the offer is accepted, it may be withdrawn by the offerer, if there be nothing else in the transaction. If, however, the offer is accepted within the agreed time, or within a reasonable time, when no particular time is fixed, then the contract is complete, and neither party can withdraw, without the consent of the other. And a contract thus made, the other conditions existing, is a proper subject of specific performance in a court of equity. There is nothing in this objection.—1 Benj. on Sales (4th Amer. Ed.), § 41; *Perkins v. Hadsell*, 50 Ill. 216; Pom. on Contr. § 169, *note* 1 to § 167; Whar. Spec. Per. §§ 200, 201; *Derrick v. Monette*, 73 Ala. 75; *Reese v. Board of Police*, 49 Miss. 639; *Mich. Mid. R. R. Co. v. Bacon*, 33 Mich. 646; *Kerr v. Purdy*, 50 Barb. 24; *Seagur v. Burns*, 14 Minn. 141; *Swartout v. Mich. A. L. R. R. Co.*, 24 Mich. 390; *Odineal v. Board of Police*, 24 Miss. 9; *Waters v. Internal & G. N. R. R. Co.*, 54 Tex. 294; *Williams Col. v. Dan-*

*forth*, 12 Pick. 541; *Amherst Academy v. Cowles*, 6 Pick. 427; *Gibbons v. M. & G. R. R. Co.*, 36 Ala. 410.

2. A second objection urged is, that it is not shown that Colquit, Gordons and their associates, had any corporate authority to construct a railroad. Railroads may be built by private enterprise, without a charter.—1 Redf. Railways, introduction, sub-section 6; 1 Wood's Railway Law, § 2; *Rogan v. Aiken*, 9 Amer. & Eng. R. R. Cas. 201; *Bank v. Edgerton*, 30 Verm. 182.

3. A third objection is, that a right to sue on Wilks' bond or obligation can not be assigned, so as to vest in the assignee a right to maintain the present bill.· The complainant may be regarded, under the terms and purposes of the contract declared on, as the successor of the persons with whom the contract was made. The bond, on its face, is made payable to Colquit, Gordons, their associates and successors. The enterprise they were entering upon was the construction of a railroad, necessarily involving the expenditure of a large sum of money. It is by no means probable that any charter had then been obtained for the construction of their road. They were but canvassers for material aid for their, probably, stupendous enterprise. Succeeding in obtaining sufficient outside aid, the next step usual in such adventures was incorporation. The road, if built at all, would probably be built by a corporation; possibly, a succession of corporations, if we may draw an inference from the history of kindred enterprises. The company, or corporation, which did the work and constructed the railroad, must be regarded as the successor of the associates who solicited and obtained the help which enabled them to complete their undertaking. There is nothing in this objection.—*Goodlett v. Hansell*, 66 Ala. 151; 6 Amer. & Eng. R. R. Cas., 622.

4. The present suit is brought by the Georgia Pacific Railway Company, a private corporation. Ownership of land, or an easement in land, except for purposes of its construction and operation, is not among the incidental powers of such corporation.—*Morgan v. Donovan*, 58 Ala. 241. And it is not shown that the act of incorporation conferred this power. Without expressly granted power, it could neither acquire nor recover mineral interests in lands; for such property does not appear to be necessary and proper for carrying out the purposes of the corporation. Some of the grounds of demurrer interposed by defendants are based on a failure of the bill to show that complainant had authority to acquire the property it seeks to recover.

5. The rulings of different courts, on this question, are not uniform. In some States it is held, that by contracting with a

[Dudley v. Farris & McCurdy.—*Ex parte* Dudley.]

corporation, the party contracting estops himself from disputing the power of the corporation to make such contract.—Waterman on Spec. Per. § 226 ; *Kansas City Horse Railroad Co. v. Hovelman*, 79 Mo. 632 ; *Parish v. Wheeler*, 22 N. H. 494; *Thompson v. Lambert*, 44 Iowa, 239 ; *Wilcox v. Toledo & Ann Harbor R. R. Co.*, 43 Mich. 584. That principle, however, even if it prevailed in this State, could not aid the present bill. Wilks made no contract with the corporation. His contract was with Colquit and the Gordons.—*Marion Savings Bank v. Dunkin*, 54 Ala. 471.

6. The case, then, presents the naked question, whether a corporation, without express power therefor, can sue on an executory contract, and recover an interest in lands, when it does not appear that such land or interest is necessary for carrying into effect some power or purpose for which the corporation was created. Our uniform rulings for forty years require us to answer this question in the negative.—*Smith v. Ala. Life Ins. Co.*, 4 Ala. 558; *City Council v. M. & W. Plank-road Co.*, 31 Ala. 76; *Waddill v. A. & T. R. R. Co.*, 35 Ala. 323; *Grand Lodge v. Waddill*, 36 Ala. 313; *Marion Savings Bank v. Dunkin*, 54 Ala. 471 ; *City of Eufaula v. McNab*, 68 Ala. 588.

As the bill now stands, the demurrer to it ought to have been sustained. We can not, however, know that it can not be so amended as to give it equity. We will, therefore, make no final decree of dismissal, but will remand the cause, that complainant may have the opportunity of offering an amendment as it may be advised. If the bill can not be so amended as to obviate the difficulty pointed out above, it must be dismissed. The demurrer is sustained.

Reversed and remanded.