# Westinghouse Machine Co. *v.* Wilkinson & Cole.[1]

# Same *v.* Montgomery Iron Works Co.

*Actions on Promissory Note, against Maker and Indorser.*

1. *Corporation for manufacturing machinery; can not act as agent to sell for another.*—A private corporation, organized, as declared in its charter, for the purpose of manufacturing and repairing machinery, and prohibited from contracting any debt without the written consent of its board of directors, has no power to act as the agent of another manufacturer in making sales of his machinery.

2. *Same; promissory note of purchaser.*—The corporation having no power to act as such agent in making sales, a promissory note taken by it from a purchaser, for the agreed price, payable to itself, is void ; and the manufacturer can not maintain an action on it, either against the maker, or against the corporation as indorser.

From the City Court of Montgomery.

Tried before the Hon. Thos. M. Arrington.

These two actions were brought by the appellant, a private corporation chartered under the laws of Pennsylvania, and were commenced on the 21st September, 1885. The cause of action, in each case, was a promissory note for $2,000, dated at Montgomery, May 9th, 1885, and payable four months after date, with interest from date ; which was signed by Wilkinson & Cole, payable to the Montgomery Iron Works Company, at the First National Bank of Montgomery, and indorsed by said Montgomery Iron Works Company ; said Wilkinson & Cole being sued as the makers; and the Montgomery Iron Works Company as the indorser. Wilkinson & Cole filed a special plea, alleging that the note sued on was null and void, because its only consideration was the agreed price of machinery sold to them by said Montgomery Iron Works Company as the general agent of the plaintiff, and said company had no authority under its charter to act as such agent, or to make such sale ; and a demurrer to this plea having been overruled, issue was joined on it. In the other case, "the only defense set up by the said Montgomery Iron Works Company was, that the indorsement of said note was beyond the powers of said defendant corporation, and therefore the defendant was not liable." On the trial, as the bill of exceptions in each case shows, it was proved that the Montgomery Iron Works Company was organ-

ized as a private corporation, under the general statutes of Alabama, in 1882, there being only four corporators, who were also the only stockholders (except an infant child of one of them) and directors; and the charter of the corporation was read in evidence, which stated that the company was "organized for the purpose of manufacturing and repairing machinery, &c., in the city of Montgomery," and further provided "that no debt should be contracted on account of said company, without the written consent of the board of directors." It was proved, also, that this charter was duly recorded; "but there was no evidence that plaintiff ever knew, or had any notice except as implied from said record, as to what the contents of said charter were." It was proved, also, that in 1883, soon after it commenced business, said company, "with the knowledge and consent of all its directors and stockholders, entered into a written contract with plaintiff, by which it became plaintiff's agent for the sale of plaintiff's engines and machinery, and continued to act as such agent until September, 1885; that the conditions of such agency were, that plaintiff was to ship to said company engines, machinery, &c., at prices which plaintiff was to receive from said company, and said company had the right to sell said engines, machinery, &c., at any price it could obtain, only accounting to plaintiff for said agreed price at which the things were charged; that in pursuance of this agreement, machinery was shipped by plaintiff to said company, from time to time, until after the 9th May, 1885, plaintiff keeping a general account against said company, on which all machinery shipped to said company, or to others as directed by it, were charged at the price plaintiff was to receive, and all remittances by said company, were credited; and that the said company, with the full knowledge and consent of all its stockholders and directors, had printed on its letter-heads the statement that it was plaintiff's agent." It was proved, also, that the said company sold to Wilkinson & Cole, in the spring of 1884, two engines and other machinery, which had been shipped by plaintiff under the agreement above stated; that the price to be paid by Wilkinson & Cole was about $3,000, part of which was paid prior to November, 1884, on which day they executed their note for the residue, payable May 9th, 1885, to the order of said company; and that the note sued on was afterwards given in extension of the balance due on this note. On this evidence, the court charged the jury, in each case, that they must find for the defendant, if they believed the evidence. The plaintiff excepted to this charge, and it is now assigned as error, together with the overruling of the demurrer to the special plea.

[Westinghouse Machine Co. v. Wilkinson & Cole.]

WATTS & SON, for the appellant.

ARRINGTON & GRAHAM, *contra.*

SOMERVILLE, J.—In May, 1885, Wilkinson & Cole exe-
cuted a note for two thousand dollars, payable to the order of
the Montgomery Iron-Works Company, which was indorsed
by the payee to the plaintiff—the Westinghouse Machine Com-
pany—a body corporate, which here brings suit on this note
respectively against the makers and the indorser. The two
causes are submitted together, and, as they depend upon essen-
tially the same principles of law, we consider them together.

The question presented is one of *ultra vires*, or of corporate
power. The consideration of the note sued on was a balance
due on certain machinery delivered by the plaintiff to the Mont-
gomery Iron-Works Company, to be sold by the latter corpora-
tion, as the agent of the plaintiff, under an arrangement by
which, as agent, it in substance agreed to account for, or guar-
antee, the payment of a certain fixed price for all machinery
received and sold by it, and was to take for its own benefit
all profits received from purchasers over and above this fixed
price.

The charter of the Montgomery Iron Works Company shows
that this company was organized for the purpose of "manu-
facturing and repairing machinery," and for no other object;
and it was expressly prohibited from contracting any debt,
without the written consent of its board of directors.

Under this state of facts, we hold that it was wholly outside
of the scope and purposes for which this corporation was cre-
ated to act as the agent of the plaintiff in making sales of ma-
chinery. The power to manufacture and repair machinery,
coupled with a prohibition against the creation of debts, except
in a mode particularly specified, does not confer by implication
the power to act as agent in making sales of machinery manu-
factured by others, and of taking and indorsing notes executed
for the purchase-money. The act was clearly *ultra vires*, and
being such, under the uniform rulings of this court, the con-
tract was void, and the doctrine of estoppel can not be invoked
by the plaintiff to debar the interposition of this defense. To
permit this would practically be giving the sanction of the
court to the doctrine, that a corporation can become omnipotent
by arrogating to itself power forbidden by its charter, which
is the vital source and origin of all corporate power.—*Cham-
bers v. Falkner*, 65 Ala. 449; *Marion Savings Bank v. Dunk-
lin*, 54 Ala. 471; *Grand Lodge of Ala. v. Waddill*, 36 Ala.
313; *Waddill v. Ala. & Tenn. R. R. Co.*, 35 Ala. 323; *City*

*Council v. Montgomery Plank-Road Co.*, 31 Ala. 76;
Wood's Field on Corp. (2d Ed.), § 243.

The note being void as against the maker—as much a nullity as if made by a married woman or a lunatic—the payee could not give it any validity, by indorsing it to one fully cognizant of all the facts attending its creation. Nor could it incur a liability as indorser of a void note, especially of negotiable paper, relating to a transaction which was beyond the scope of its corporate powers.—Green's Brices' Ultra Vires, (2d Ed.) 252, 255–256; 1 Daniel Neg. Instr. (3d Ed.), §§ 377 *et seq.*

These views result in the affirmance of the judgment in each of the two causes under consideration, which is accordingly adjudged.